FILED
2014 Aug-01  PM 04:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | | |
|---|---|---|
| ARLENE GREEN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.: 6:13-CV-534-VEH** |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | |
| COMMISSIONER, SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION[1]

### INTRODUCTION

Plaintiff Arlene Green brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security

---

[1] Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security."). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

Income ("SSI").[2] Ms. Green timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[3] For the following reasons, the court **AFFIRMS** the Commissioner's decision.

### STATEMENT OF THE CASE

Ms. Green was 53 years old at the time of her hearing before the Administrative Law Judge ("ALJ"). *Compare* Tr. 171 *with* Tr. 23. She has a high school equivalent education. Tr. 193. Her past work experience includes employment as a nurse's aid. Tr. 190. She claims she became disabled on November 13, 2008,[4] due to acute chronic neck pain, upper back pain, cervical spasms, chronic obstructive pulmonary disease ("COPD"), gastroesophageal reflux disease ("GERD"), and high blood pressure. Tr. 189. Her last period of work ended on September 15, 2004. *Id.*

On January 7, 2009, Ms. Green protectively filed a Title II application for a period of disability and DIB. Tr. 23. She also protectively filed a Title XVI

---

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[3]42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

[4]On March 21, 2011, Ms. Green amended her disability onset date to November 18, 2008. Tr. 248.

application for SSI on that date. *Id.* On April 2, 2009, the Commissioner initially denied these claims. *Id.* Ms. Green timely filed a written request for a hearing on April 7, 2009. *Id.* The ALJ conducted a hearing on the matter on March 21, 2011. *Id.* On September 13, 2011, she issued her opinion concluding Ms. Green was not disabled and denying her benefits. Tr. 34. She timely petitioned the Appeals Council to review the decision on September 28, 2011. Tr. 18. On January 18, 2013, the Appeals Council issued a denial of review on her claim. Tr. 1.

Ms. Green filed a Complaint with this court on March 20, 2013, seeking review of the Commissioner's determination. Doc. 1. The Commissioner answered on June 28, 2013. Doc. 7. Ms. Green filed a supporting brief (doc. 10) on August 12, 2013, and the Commissioner responded with her own (doc. 11) on September 11, 2013.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence

is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[5] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

---

[5]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be

found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

1.  Ms. Green met the insured status requirements of the Social Security Act through March 31, 2009.

2.  She had not engaged in substantial gainful activity since November 18, 2008, the alleged disability onset date.

3.  She had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, COPD, osteoarthritis with Osler's nodes of two middle fingers on the right hand, and status post carpal tunnel release surgery on the left wrist.

4.  She did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.  She had the residual functioning capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the option to sit and/or stand afforded to the claimant for one to two minutes every hour or so (meaning the ability to change position – sit to stand, stand to sit). Additionally, she would be limited to occasional (meaning up to one third of the work day) postural maneuvers such as climbing ramps and stairs, overhead arm work, gross manipulation with the left, non-dominant upper extremity, and fine fingering with the right upper

extremity; along with frequent (meaning up to two-thirds of the work day) movements of the head, fine fingering with the left upper extremity and gross manipulation with the right upper extremity. Furthermore, she would need to avoid concentrated exposure to extreme cold, dust, fumes, odors, gases, and areas of poor ventilation, avoid work around hazardous machinery or unprotected heights, and never climb ladders, ropes, or scaffolds.

6.     She was unable to perform any past relevant work.

7.     She was born on [redacted], and was 51 years old, which is defined as individual closely approaching advanced age, on the alleged disability date.

8.     She had at least a high school education and was able to communicate in English.

9.     Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that she was "not disabled," whether or not she had transferable job skills.

10.    Considering her age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that she could perform.

11.    Ms. Green had not been under a disability, as defined in the Social Security Act, from November 18, 2008, through the date of this decision.

Tr. 25-34.

## DISCUSSION

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its

7

responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

## I.   Substantial Evidence Supported the ALJ's RFC Determination.

### A.   *The ALJ Properly Evaluated Ms. Green's Pain-Based Disability Allegations.*

Ms. Green primarily alleges pain as the source of her disability. The court will thus examine whether the ALJ properly evaluated Ms. Green's's pain-based allegations under the prevailing standards in this Circuit. A claimant who seeks "to establish a disability based on testimony of pain and other symptoms" must show the following:

- • Evidence of an underlying medical condition; and

- • Either:

  - ▸ objective medical evidence confirming the severity of the alleged pain; or

  - ▸ that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted). An ALJ

must articulate "explicit and adequate reasons" in order to discredit subjective testimony. *Id.* (citation omitted). Failure to do so "requires, as a matter of law, that the testimony be accepted as true." *Id.* (citation omitted). However, the ALJ does not need to "specifically refer to every piece of evidence in his decision," so long as the decision shows that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citation omitted).

The ALJ here was both explicit and convincing in explaining why she discredited Ms. Green's allegations regarding the disabling effects of her pain. She first conceded that Ms. Green's claims were credible to a limited extent. Tr. 28-29. Specifically, the ALJ credited Ms. Green's descriptions of back and neck pain, left wrist and right finger pain, and breathing difficulties. *Id.* The ALJ clarified that she accounted for these limitations by prescribing certain postural, manipulative, and environmental restrictions in her RFC assessment. *Id.* However, the ALJ ultimately discounted Ms. Green's assertion that her pain was totally disabling because of "significant inconsistencies in the record as a whole." Tr. 29.

The ALJ then meticulously documented which parts of the record undermined Ms. Green's disability claims. This included the following evidence:

- a 2011 x-ray of Ms. Green's cervical spine revealed that her cervical lordosis was "well-maintained";

- a contemporaneous x-ray of her right hand showed no fracture, dislocation, or arthritic changes and was noted as normal;

- a March 2007 examination indicated that her lungs were clear with no reports of continued symptoms;

- an April 2007 examination noted that her lungs were clear to auscultation with no decreased breath sounds, no audible wheezes, rhonchi, rales, or prolonged expiration;

- clinical examinations of her wrists in April 2007 and March 2009 showed normal range of motion with normal grip strength and dexterity;

- she had never been recommended for surgery, pain management, or epidural blocks as treatment for her pain;

- she had never requested changes in her pain medication or sought alternative pain medications from her treating physicians; and

- there were major gaps in her treatment record between incidents in which she sought medical aid.

Tr. 29-30. Altogether, the ALJ provided "such relevant evidence as a reasonable person would accept as adequate to support [her] conclusion." *Bloodsworth*, 703 F.2d at 1239. The ALJ assessed Ms. Green's condition in its entirety and identified specific parts of the record that supported her RFC determination. The court therefore finds that substantial evidence supports it.

### B.    *The ALJ Properly Considered the Opinion Evidence.*

Ms. Green next argues that the ALJ misinterpreted the opinion evidence offered by two consultative examiners: Dr. Frank G. Gillis, M.D., and by Dr. Pramelia

10

D. Goli, M.D. Doc. 10 at 5, Tr. 258-59. In his April 26, 2007, report summarizing his

examination of Ms. Green, Dr. Gillis noted Ms. Green's persistent reports of pain. Tr.

296. He further observed that she was generally "a well nourished[,] well developed

white female who is alert and oriented with no acute distress noted. [She was]

[a]ppropriately attired and cooperative with examiner." Tr. 297. He finally concluded

that she "would have difficulty with job requirements involving prolonged standing,

sitting, walking, bending, lifting, pushing, pulling, bending or twisting of head and/or

waist." Tr. 299. In her opinion, the ALJ noted this conclusion and stated the

following:

> The undersigned notes the word "prolonged" is not defined or used in the
> Regulation or in the Dictionary of Occupational Titles; therefore, the
> undersigned finds the word "prolonged" as actually meaning "constant" as set
> forth in the Regulations and in the Dictionary of Occupation Titles. As such,
> the undersigned gives great weight to Dr. Gillis's opinion regarding the
> claimant's limitations, despite only examining the claimant on one occasion,
> because the opinion was consistent with his own examination of the claimant
> and also the medical evidence as a whole in this case.

Tr. 32. Later on, the ALJ found this opinion consistent with that of Dr. Goli, who

rendered the following conclusions regarding Ms. Green in June 2011:

> The claimant [was] able to lift and carry up to 10 pounds frequently, sit for 2
> hours at a time (up to 4 hours in a 8 hour workday), stand for 1 hour at a time
> (up to 2 hours in a 8 hour workday), and walk up to 2 hours in an 8 hour
> workday . . . the claimant would be restricted to occasional reaching all around
> and overhead, push/pull movements, operation of foot controls bilaterally,
> postural maneuvers, and work around unprotected heights, moving mechanical

parts, and operation of motor vehicles. Additionally, the claimant would be
limited to frequent handling, fingering, and feeling bilaterally and exposure to
humidity, wetness, dust, odors, fumers, and pulmonary irritants.

*Id*. The ALJ also gave this opinion great weight and found that it and Dr. Gillis's
report further supported her conclusion that Ms. Green could perform a reduced range
of light work. *Id.*

Ms. Green argues that the ALJ essentially mischaracterized this evidence.
Specifically, Ms. Green maintains that the ALJ somehow "rejected" Dr. Gillis's
opinion by construing the word "prolonged" to mean "constant." Tr. 258-59. Ms.
Green also contends that Dr. Goli in fact "assessed an ability to lift no more than ten
pounds." Doc. 10 at 5. In her judgment, both doctors' opinions support a finding that
she could only perform sedentary, rather than light, range of work. *Id.* at 5-6.

The evidence does not support Ms. Green's interpretation. As a preliminary
matter, the court notes that the opinion of a one-time examiner is not entitled to
deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citing *Gibson v.
Heckler*, 729 F.2d 619, 623 (11th Cir. 1986)). However, the ALJ may credit such an
opinion if record evidence otherwise supports it. Such was the case here. The
Regulations define "light work" in the following manner:

Light work involves lifting no more than 20 pounds at a time with frequent
lifting or carrying of objects weighing up to 10 pounds. Even though the
weight lifted may be very little, a job is in this category when it requires a good

Case 6:13-cv-00534-VEH   Document 12   Filed 08/01/14   Page 13 of 15

> deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). This description – along with the detailed restrictions the ALJ prescribed to tailor her RFC assessment to Ms. Green's condition – cohere with the judgments offered by Drs. Gillis and Goli. Contrary to Ms. Green's contention, Dr. Goli did not opine that she could lift no more than ten pounds. Rather, he indicated that she could "frequently" – i.e. one-third to two-thirds of the time – lift up to 10 pounds. Tr. 351. Such a conclusion is consonant with a reduced range of light work as described above. Moreover, the ALJ's construction of Dr. Gillis's use of "prolonged" to mean "constant" is both reasonable and supported by the general thrust of the doctor's report. Altogether, then, the court finds that the ALJ properly evaluated this opinion evidence.

## II.   The ALJ Properly Assessed Ms. Green's Impairments, Both Singly and In Combination.

Ms. Green finally argues that the ALJ failed to assess the collective effect of Ms. Green's various severe impairments. She complains that the ALJ only evaluated her impairments separately and did not provide her overall condition with the holistic analysis it merited.

"When a claimant has alleged [multiple impairments], a claim for [disability benefits] may lie even though none of the impairments, considered individually, is disabling." *Walker v. Bowen,* 826 F.2d 996, 1001 (11th Cir.1987) (per curiam) (internal quotation omitted). An ALJ must therefore make "specific and well-articulated findings" as to the combined effect of all impairments that a claimant has. *Id.* (citations omitted); *see also Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (holding that ALJ must address the degree of impairment cased by the "combination of physical and mental medical problems") (citations omitted); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (finding that an ALJ did not give adequate consideration to effect that combination of exertional and non-exertional impairments had on claimant's ability to work). The ALJ's failure to consider properly a claimant's condition requires remand.  *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1220 (11th Cir. 2001).

The record here reveals that the ALJ adequately evaluated the cumulative effect of Ms. Green's impairments. In her opinion, she did not evaluate the impact of each of these impairments simply in isolation. Instead, she assigned Ms. Green an RFC designation that clearly reflected the breadth of Ms. Green's medical history. Moreover, the ALJ considered medical evidence from Ms. Green's various physicians – who, in turn, were obviously assessing Ms. Green's entire condition and not just

14

specific ailments. Altogether, the court finds the ALJ's analysis in this area sufficient under the standards prevailing in this Circuit.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the decision will be affirmed by separated order.

**DONE** and **ORDERED** this the 1st day of August, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

15